UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
---------------------------------- X  Case No. 07-cv-6359 (HB)
ARYEH COHEN,                        :
                                    :  ECF CASE
              Plaintiff,            :
                                    :
         vs.                        :
                                    :
LOOKING FOR PALLADIN, LLC, MAHYAD   :
TOUSI, TOUSI PRODUCTIONS LLC,       :
ANDRZEJ KRAKOWSKI and PINE HILL     :
PRODUCTIONS, INC.                   :
                                    :
              Defendants.           :
---------------------------------- X
```

DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT
OF MOTION TO DISMISS

McCue Sussmane & Zapfel, P.C.
Attorneys for Defendants
521 Fifth Avenue, 28th Floor
New York, New York 10175
212 931-5500

## TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ................................................................................................. 1
FACTS ..................................................................................................................................... 2
ARGUMENT ............................................................................................................................ 4
    A.  Plaintiff's claim for return of his capital contribution to the LLC is subject to the
    mandatory arbitration provisions of the Operating Agreement. ................................. 4
    B. The First Cause of Action Fails to State Claim under the Securities Act. ............................ 8
    C.  The First Cause of Action Fails to State Claim for Control Person Liability under the
    Securities Act .............................................................................................................. 11
    D.  Plaintiff's Fails to State a Claim for  Intentional Infliction of Emotional Distress. ........... 12
    E. The Court Should Decline Jurisdiction Over the Second Cause of Action......................... 14
CONCLUSION ....................................................................................................................... 16

TABLE OF AUTHORITIES

Statutes
*15 U.S.C. §77(l)(1))* ............................................................................................ 9
*15 U.S.C. §77d(2)* ............................................................................................. 9
*15 U.S.C. §77e* ................................................................................................. 10
*15 U.S.C. §77e(a) and (c)* ................................................................................ 9
*15 U.S.C.A. § 77o* ............................................................................................ 11
*28 U.S.C. §1367(c)(3)* ...................................................................................... 15

*17 C.F.R. §230.501-230.508* ........................................................................... 9


Cases
*Anadarko Petroleum Corp. v Panhandle Eastern Corp.,* 1987 WL 16508 (Del.Ch. 1987) ........... 8
*Boyce v. Greeley Square Hotel Co.,* 228 N.Y. 106 (1920). .................................... 14
*Campoverde et. al v. Sony Pictures Entertainment et. al,* 2002 WL 31163804
 (S.D.N.Y. 2002) ................................................................................................. 13
*Carnegie-Mellon Univ. v. Cohill,* 484 U.S.343 (1988) ........................................ 15
*Dietrich v. Bauer,* 76 F.Supp.2d 312, 333 (S.D.N.Y. 1999) ................................ 12
*Druschke v. Banana Republic, Inc. and Banana Republic, LLC.,* 359 F.Supp.2d 308, 314
(2005) ................................................................................................................ 12
*Faye L. Roth Revocable Trust v. UBS Painewebber, Inc.* 323 F.Supp.2d 1279, 1301
(S.D.Fla. 2004) .................................................................................................. 11
*Federal Arbitration Act, 9 U.S.C. §2* ................................................................... 4
*FRCP 12(b)(6)* .................................................................................................... 8
*Genesco, Inc. v. T. Kakiuchi & Co.,* 815 F.2d 840, 845 (2d Cir. 1987) ................ 5
*Goodwin Properties, LLC v. Acadia Group, Inc.,* 2001 WL 800064, *8 (D.Me. 2001) ........... 11
*Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College,* 128 F.3d 59, 63
(2d. Cir. 1997) ................................................................................................... 9
*Howell v. New York Post, Co.* 81 N.Y.2d 115,122 (1993) .................................... 13
*Krimstock v. Kelly,* 306 F.3d 40, 47-48 (2d Cir. 2002). ......................................... 8
*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.,* 252 F.3d 218 (2d Cir. 2001) ..... 5
*Marcella v. ARP Films, Inc.* 778 F.2d 112,119 (1985) .......................................... 14
*Marcus v AT&T Corp.,* 138 F.3d 46 (2d Cir. 1998) ............................................. 15
*Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.,* 460 U.S.1, 24-25 (1983) ........ 5
*Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America.* 37 N.Y.2d 91, 96 (1975) ................ 8
*Prudential Lines, Inc. v. Exxon Corp.,* 704 F.2d 59, 64 (C.A.N.Y 1983) ............... 6
*SEC v. Ralston Purina Co.,* 346 U.S. 119, 124 (1953) .......................................... 9
*Shalom v Advanced Marketing Technology Corp.,* 1990 WL 260674, *1 (S.D.N.Y.,1990) ......... 7
*Sharma v. Oriol,* 2005 WL 1844710, *2 (S.D.N.Y. Aug. 3, 2005) ......................... 6
*Sodemo, S.A. v. Chase Manhattan Bank, N.A.,* 1995 WL 746382, *3
(S.D.N.Y. Dec. 15, 1995) .................................................................................. 6
*Wehringer v Standard Security Life Ins. Co.,* 57 NY2d 757, 759 ........................ 14
*Westendorf v. Gateway 2000, Inc.* 2000 WL 307369, *5 (Del.Ch.,2000) ............... 8
*Wright v. National Warranty Co.,* 953 F.2d 256, 260 (6th Cir. 1992) .................. 10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
ARYEH COHEN,                                   :    Case No. 07-cv-6359 (HB)
                                               :
          Plaintiff,                           :
                                               :
     vs.                                       :
                                               :
LOOKING FOR PALLADIN, LLC, MAHYAD              :
TOUSI, TOUSI PRODUCTIONS LLC,                  :
ANDRZEJ KRAKOWSKI and PINE HILL                :
PRODUCTIONS, INC.                              :
                                               :
          Defendants.                          :
------------------------------------------------------------- X

     Defendants, by their attorneys McCue Sussmane & Zapfel, P.C, respectfully submit this Memorandum of Law in support of their motion to dismiss this action.

PRELIMINARY STATEMENT

     Plaintiff brings this action seeking the return of his capital contribution of $65,000 to a limited liability company formed to produce a motion picture.  The basis for Plaintiff's first claim is that the investment was not exempt from the registration requirements of the Securities Act of 1933 (the "Securities Act") because Plaintiff was not an accredited investor within the meaning of the Securities Act.  The first cause of action should be dismissed for failure to state a claim because in the subscription agreement executed by Plaintiff, he  affirmatively represented in writing that Plaintiff was an accredited investor.    In the alternative, the first cause of action should be dismissed and arbitration compelled because the operating agreement executed by the parties requires arbitration of this dispute.

     The second cause of action against Defendant Mahyad Tousi alleges  intentional infliction of emotional distress.  Assuming that the facts alleged by Plaintiff are true for purposes

1

of this motion, the second cause of action must be dismissed because Plaintiff fails to plead

extreme or outrageous conduct sufficient to state a claim under New York law. Additionally, in

the event the Court dismisses the First Cause of Action, the Court should decline to accept

supplemental jurisdiction over the second cause of action because Plaintiff does not allege

diversity of citizenship.

FACTS

Defendant Looking for Palladin, LLC (the "LLC") is a limited liability company formed

to produce a motion picture titled "Looking for Paladin" (the "Film') which was shot on location

in Guatemala in the summer of 2006. *Complaint ¶¶9, 40.*

Tousi Productions LLC and Pine Hill Productions, Inc. are the Managers of the LLC.

*Complaint ¶10*

Defendant Andrzej Krakowski ("Krakowski") is the President of Pine Hill Productions,

Inc. and the writer and director of the Film. *Complaint ¶¶6, 13; and Krakowski Affidavit ¶¶1,2.*

Defendant Mahyad Tousi ("Tousi") is the Manager of Tousi Productions, LLC and a producer of

the Film. *Complaint ¶¶4, 12; and Krakowski Affidavit ¶4.*

There is no allegation that diversity of citizenship exists in this action. *Complaint ¶¶1, 7,*

*and Krakowski Affidavit ¶5.*

On July 17, 2006 Plaintiff executed a Subscription Agreement (the "Subscription

Agreement") and Operating Agreement (the "Operating Agreement") pursuant to which Plaintiff

2

agreed to make a capital contribution of $70,000[1] to the LLC in exchange for one membership interest in the LLC. *Complaint ¶26, and Krakowski Affidavit ¶¶6-8, Exhibits A and B.*

Plaintiff is the only member of the LLC that is not an affiliate of the Manager Pine Hill Productions, Inc. *Krakowski Affidavit ¶6.*

The Subscription Agreement executed by Plaintiff contains the specific representation of Plaintiff that he is an accredited investor, as follows:

> 2. Accredited Investors. Subscriptions will be accepted only from persons who are accredited investors, as such term is defined under the Securities Act of 1933, as amended. The undersigned represents that he qualifies as an accredited investor in accordance by satisfying one of the requirements set forth below:
>
> (a) in the case of a Subscriber who is an individual, check each box below which is applicable:
>
> /____/      (i) Net worth, or joint net worth with that of a spouse, at the time of purchase of the Units, exceeds USD$1,000,000.
>
> /____/      (ii) Individual income was in excess of USD$200,000 in each of the two most recent years or joint income with that of spouse was in excess of USD$300,000 in each of those years and Subscriber reasonably expects to reach the same income level in the current year. . .

*Krakowski Affidavit Exhibit A.*

Section 13.03 of the Operating Agreement provides for compulsory arbitration of this dispute, as follows:

> Any dispute hereunder shall be resolved solely by arbitration before a single arbitrator in the City and County of New York. The decision of the arbitrator may include a ruling allocating the expense of attorney's fees and arbitration fees and expenses to any party or parties to the dispute. The decision of the arbitrator shall be final, and may not be appealed, and may be entered as an enforceable judgment in any court of appropriate jurisdiction.

*Krakowski Affidavit Exhibit B.*

---

[1] Plaintiff's capital contribution of $70,000 for which he only contributed $65,000 was payable as follows: $65,000 upon execution and $5,000 on or before October 6, 2006.

3

Defendants knew that Plaintiff desired to act in the Film (*Complaint ¶36)* and cast Plaintiff in a principal role in the Film (*Krakowski Affidavit ¶10).*  Plaintiff traveled to Guatemala to appear in the Film (*Complaint ¶40.)*  After shooting of plaintiff's scenes commenced (*Krakowski Affidavit ¶10),*  Plaintiff told Defendant Krakowski, the director, that he had to leave the Film because of a family emergency  (*Complaint ¶45).* The Film was forced to recast Plaintiff's role and reshoot his scenes at considerable expense (*Krakowski Affidavit ¶10).*

Plaintiff now seeks a return of his capital contribution to the LLC in the amount of $65,000. This action is specifically prohibited by Section 5.02 of the Operating Agreement which states that "no Member may withdraw his, her or its Capital Contribution.

Defendants requested that plaintiff submit this dispute to arbitration.  Plaintiff refused. *Krakowski Affidavit ¶11.*

ARGUMENT

A.  Plaintiff's claim for return of his capital contribution to the LLC is subject to the mandatory arbitration provisions of the Operating Agreement.

Section 13.03 of the Operating Agreement  provides:

> Any dispute hereunder shall be resolved solely by arbitration before a single arbitrator in the City and County of New York. The decision of the arbitrator may include a ruling allocating the expense of attorney's fees and arbitration fees and expenses to any party or parties to the dispute. The decision of the arbitrator shall be final, and may not be appealed, and may be entered as an enforceable judgment in any court of appropriate jurisdiction.

Federal  policy strongly favors arbitration.  *See Federal Arbitration Act, 9 U.S.C. §2.*  As a matter of law "any doubts concerning the scope of arbitrability issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S.1,

24-25 (1983).  Arbitration clauses are to be construed as broadly as possible, and arbitration will be compelled "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."  *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.,* 923 F. 2d  245, 250 (2d Cir. 1991).

To find a valid agreement to arbitrate, a court must apply generally accepted principals of contract law.  *Genesco, Inc. v. T. Kakiuchi & Co.*, 815 F.2d 840, 845 (2d Cir. 1987) states that "[A] party is bound by the provisions of a contract that he signs, unless he can show special circumstances that would relieve him of such obligation."   A court should consider only "whether there was an objective agreement with respect to the entire contract."  <u>*Id.*</u>  In *Genesco,* the Second Circuit dealt with arbitration clauses in purchase and sale agreements for textiles. The Court held that the parties' arbitration clause encompassed the plaintiff's claims under the civil RICO statute because the allegations which formed the predicate acts of plaintiff's RICO claim all derived from the parties' transactions under the sales agreements.   In the instant case, the factual allegations relating to Plaintiff's securities law claim are all derived from Plaintiff's agreement to become a member of the LLC.  The allegations relate to the rights of Plaintiff as a member of the LLC, and require an analysis of Plaintiff's rights under the Operating Agreement and therefore must be arbitrated.

The Second Circuit has established the following inquiry for determining whether a particular dispute falls within the scope of the arbitration agreement.  *See Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218 (2d Cir. 2001). First, a court should classify the particular clause as either broad or narrow.  If broad, there is a presumption that the claims are arbitrable, and arbitration of even collateral matters will be ordered. *Id. at 224.*

5

Second, if the clause is narrow, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. *Id. at 224.* Where the arbitration agreement is narrow, a collateral matter will generally be ruled beyond its purview. See *Sharma v. Oriol*, 2005 WL 1844710, *2 (S.D.N.Y. Aug. 3, 2005). In making this determination, courts must focus on the factual allegations in the complaint rather than the legal causes of action asserted. *Id.*

In determining whether a clause is broad or narrow, a court considers possible "words of limitation which would indicate a narrower clause and the tone of the clause as a whole." *Sodemo, S.A. v. Chase Manhattan Bank, N.A.*, 1995 WL 746382, *3 (S.D.N.Y. Dec. 15, 1995) . *Sodemo* dealt with an arbitration clause stating:  "The parties agree to submit any dispute hereunder to final and binding arbitration…"  *Sodemo* stated that the clause was "broad, but not unlimited" and ruled that if the allegations underlying the claims touch matters covered by the parties' agreements, then those claims must be arbitrated, whatever the legal labels attached to them. In the instant case, the Operating Agreement contains an "any dispute hereunder" arbitration clause very similar to *Sodemo*.  The Operating Agreement clause is a "broad clause" and Plaintiff's claim that he is entitled to a return of his capital contribution to the LLC does not only unquestionably touch upon matters covered by the Operating Agreement, but goes to the very heart of the Operating Agreement. Plaintiff's suit is not only bad faith attempt to now withdraw his capital contribution which is specifically prohibited by Section 5.02 of the Operating Agreement, but is also clearly a matter more proper for arbitration.  Plaintiff cannot avoid the arbitration clause by failing to plead a breach of contract claim and instead seeking to hold Defendants liable in tort or for violation of federal securities laws. Plaintiff cannot avoid the

6

arbitration clause by recasting as a tort what is little more than a claim that Defendants breached their agreement to allow Plaintiff to act in the Film.

In *Shalom v Advanced Marketing Technology Corp.*, 1990 WL 260674, *1 (S.D.N.Y.,1990),  plaintiff entered into an "investment contract" with defendants composed of two documents, a Purchase Agreement and a Maintenance and Service Agreement ("MSA"). The MSA contained the following arbitration clause which stated: "The parties agree that any dispute arising hereunder shall be submitted to binding arbitration. " Plaintiff alleged violations of the Securities Act and the Securities Exchange Act of 1934, as amended. *Shalom* rejected the plaintiff's argument that the dispute arose out of Purchase Agreement, not the MSA, reasoning that "plaintiff believed he was entering into a single agreement which consisted of two interrrelated documents."  In the instant case, Plaintiff entered into a single agreement to become a member of the LLC which consisted of the two interrelated documents - the Operating Agreement and Subscription Agreement[2].  Plaintiff's federal securities law cause of action and tort causes of action must be arbitrated.

New York law also favors broad enforcement of arbitration clauses. The Court of Appeals explained in *Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America.*  37 N.Y.2d 91, 96 (1975) that:

> "Basically the courts perform the initial screening process designed to determine in general terms whether the parties have agreed that the subject matter under dispute should be submitted to arbitration. Once it appears that there is, or is not a reasonable relationship between the subject matter of the dispute and the general subject matter of the underlying contract, the court's inquiry is ended. Penetrating definitive analysis of the scope of the agreement must be left to the arbitrators whenever the parties have broadly

---

[2] The Subscription Agreement is titled "Looking for Palladin, LLC  Subscription Agreement" and states  "the Company will be operated in accordance with the Operating Agreement (the "Operating Agreement") furnished to the undersigned  herewith" and "Tender of the aforesaid Funds, together with  this Agreement and the signature page of the Operating Agreement (the "Documents") shall be made by delivery of the same to the Company…"

agreed that any dispute involving the interpretation and meaning of the agreement should be submitted to arbitration.

To the extent any of Plaintiff's claims arise under New York law, it is clear that there is a reasonable relationship between the dispute and the subject matter of the Operating Agreement. To the extent Delaware law is applicable to any of Plaintiff's claims any doubts concerning arbitrability should be resolved in favor of arbitration.

Delaware law adopts the broad federal policy in favor of arbitration and follows the rule stated in *Moses H. Cone, supra,* that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. *See Anadarko Petroleum Corp. v Panhandle Eastern Corp.,* 1987 WL 16508 (Del.Ch. 1987); and *Westendorf v. Gateway 2000, Inc.* 2000 WL 307369, *5 (Del.Ch.,2000). In *Westendorf,* the court enforced an arbitration clause that was present in only one agreement in a series of related agreements, examining the totality of circumstances, and recognizing the policy favoring arbitration. *Id.*

Under Delaware law the fact that the Subscription Agreement did not contain an arbitration clause is immaterial because it was one of a series of related agreements.

B. The First Cause of Action Fails to State Claim under the Securities Act.

The standards governing motions to dismiss pursuant to *FRCP 12(b)(6)* are well-settled. When considering a motion to dismiss, a court is required to accept as true all of the facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor. *See Krimstock v. Kelly*, 306 F.3d 40, 47-48 (2d Cir. 2002). A motion to dismiss should be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hamilton Chapter of Alpha Delta Phi, Inc. v. Hamilton College*, 128 F.3d

59, 63 (2d. Cir. 1997). Plaintiff can prove no set of facts to support his claim for violation of the Securities Act.

Section 5(a) and (c) of the Securities Act make it unlawful for any person, directly or indirectly, to make use of any means of communication in interstate commerce or the mails to sell a security through the use or medium of any prospectus unless a registration statement for such security has been filed with the SEC. *15 U.S.C. §77e(a) and (c)*. The purpose of the registration requirement is to protect investors by promoting full disclosure of information necessary to make informed investment decisions. *SEC v. Ralston Purina Co.*, 346 U.S. 119, 124 (1953). Plaintiff does not allege any failure of the LLC to provide full disclosure of all information relating to the LLC.

Section 12(1) of the Securities Act provides that any person who offers or sells securities in violation of Section 5 shall be liable to the person purchasing the security from him. *15 U.S.C. §77(l)(1))*.

Section 4 of the Securities Act creates exemptions from registration. Section 4(2) exempts transactions by an issuer not involving a public offering, *15 U.S.C. §77d(2)*. Section 4(6) exempts transactions involving offers or sales by an issuer solely to one or more accredited investors if the aggregate offering price does not exceed $5,000,000. *15 U.S.C. §77d(6)*.

The Regulations that implement the exemptions under Section 4 are commonly referred to as Regulation D, *17 C.F.R. §230.501-230.508*. Section 501 of Regulation D defines "accredited investor" as follows:

> Accredited Investor. Accredited investor shall mean any person who comes within any of the following categories, or who the issuer reasonably believes comes within any of the following categories, at the time of the sale of the securities to that person:

9

….

(5) Any natural person whose individual net worth, or joint net worth with that person's spouse, at the time of his purchase exceeds $1,000,000;

(6) Any natural person who had an individual income in excess of $200,000 in each of the two most recent years or joint income with that person's spouse in excess of $300,000 in each of those years and has a reasonable expectation of reaching the same income level in the current year; . . .

*17 C.F.R. §230.501.*

Plaintiff claims that the LLC sold to Plaintiff a security in violation of Section 5 of the Securities Act, *15 U.S.C. §77e*, "[b]ecause the offered securities were not registered under the Securities Act, and because plaintiff was not an accredited investor under Regulation D." *Complaint ¶26.*

In order to attempt to state a claim under Section 12, the Complaint contains the false statement that "Plaintiff did not represent to defendants or their agents that he was an accredited investor under Regulation D." *Complaint ¶21.* Plaintiff in fact executed and delivered a Subscription Agreement in which Plaintiff warranted and represented that he was an accredited investor. *Krakowski Affidavit Exhibit A.*

Reported cases in which plaintiffs have had the audacity to disavow their own written representations of their accredited investor status are rare. In *Wright v. National Warranty Co.,* 953 F.2d 256, 260 (6th Cir. 1992), the Sixth Circuit rejected a very similar argument from plaintiffs claiming that an exemption was not available under Regulation D on the basis of the fact that plaintiffs had attested to the fact that they fit within one of the definitions of an accredited investor set forth in Rule 501. The Court relied on the fact that plaintiffs "specifically warranted and represented in the Subscription Agreement, which closely parallels the language in Rule 501(a)(4)-(6) and (8) of Regulation D, that they were accredited investors." *Id at 260.*

10

In *Faye L. Roth Revocable Trust v. UBS Painewebber, Inc.* 323 F.Supp.2d 1279, 1301 (S.D. Fla. 2004), the court granted summary judgment on the issue of qualification for an exemption under Regulation D, ruling that the plaintiffs could not disavow their representations that they were accredited investors under Regulation D. *See also Goodwin Properties, LLC v. Acadia Group, Inc.*, 2001 WL 800064, *8 (D. Maine 2001)("plaintiffs may not disavow their representations to the defendants that they were in fact accredited investors").

Plaintiff can prove no set of facts to support his claim for violation of the Securities Act. Plaintiff specifically warranted and represented in the subscription agreement, which closely parallels the language in Regulation D, that he was an accredited investor. Such representation formed the basis of his acceptance as a member of the LLC. In light of such evidence, there is no basis to accept Plaintiff's self-serving disavowal. Absent such allegation, Plaintiff simply pleads no facts to support his claim for violation of the Securities Act. There is no allegation that the private placement memorandum received by Plaintiff failed to comply with the requirements of Regulation D or that defendants otherwise failed to comply with Regulation D. Plaintiff is the only member of the LLC who is not an affiliate of one of the managers of the LLC. The offering was clearly not a public offering as the LLC accepted a $65,000 investment from only one outside investor.

C. The First Cause of Action Fails to State Claim for Control Person Liability under the Securities Act

Section 15 of the Securities Act imposes personal liability on persons who control any person liable under Section 12. *15 U.S.C.A. § 77o.* The statue provides that there is no personal liability for a controlling person who "had no knowledge of or reasonable ground to believe in

11

the existence of the facts by reason of which the liability of the controlled person is alleged to exist." *See Dietrich v. Bauer*, 76 F.Supp.2d 312, 333 (S.D.N.Y. 1999)(plaintiff must plead that the controlling person was in some meaningful sense a culpable participant in the primary violation).

Plaintiff alleges that the managers of the LLC and the individual officers of the managers are liable as control persons. Plaintiff was admitted as a member of the LLC based on his written representation that he was an accredited investor. Plaintiff pleads no facts to support his conclusory allegation that defendants had knowledge or reasonable grounds to believe that Plaintiff was not an accredited investor.

D. Plaintiff's Fails to State a Claim for Intentional Infliction of Emotional Distress.

To state a cause of action for intentional infliction of emotional distress ("IIED") a plaintiff must plead: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress. *See Druschke v. Banana Republic, Inc.*, 359 F.Supp.2d 308, 314 (2005).

The entirety of Plaintiff's claim for IIED is stated as follows:

44. Because of that personal animosity, defendant Tousi, and other individuals acting, on information and belief, on Tousi's behalf, threatened plaintiff with arrest and other possible consequences if he did not abandon the Film and leave Antigua.

45. Because plaintiff was in fear of arrest, and other possible adverse consequences, he told defendant Krakowski that he had to leave the Film temporarily because of family emergency.

*Complaint ¶44,45.*

12

   1. Plaintiff Fails to Plead Extreme and Outrageous Conduct.

  New York courts set a very high threshold for IIED claims.  The Court of Appeals stated in *Howell v. New York Post, Co.* 81 N.Y.2d 115,122 (1993) that:

> Liability has been found only where the conduct in question has been so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and be regarded  as atrocious, and utterly intolerable in a civilized community.

  The "outrageous conduct" element is most susceptible to determination as a matter of law and serves the dual function of filtering out complaints that do not belong in court. *Id.  at 122*

  In *Campoverde et. al v. Sony Pictures Entertainment et. al*, 2002 WL 31163804 (S.D.N.Y. 2002), prospective talk show guests sued the producers of the *Ricki Lake* television show for IIED.  Plaintiffs alleged that a dispute arose regarding execution of contracts to appear on the show.  Plaintiffs alleged that defendants were abusive, threatening, kept plaintiffs behind a shut and guarded door, physically assaulted plaintiffs,  and ultimately threw plaintiffs out of the studio. *Id. at 12*.  The court held that the alleged conduct did not rise to level of outrageous conduct necessary to state a claim for IIED.

  In *Druschke v. Banana Republic, Inc.*, 359 F.Supp.2d 308 (2005),  plaintiff alleged that defendants made false accusations of fraud and larceny and actually caused plaintiff to be arrested.  The court held that the alleged conduct did not meet the extremely high threshold under New York law for maintenance of an IIED claim, noting that plaintiff had not even alleged that defendants made deliberate falsehoods.

  Plaintiff's claims do not approach  the high threshold required to state a claim for IIED.  As was the case in *Druschke*, Plaintiff fails to allege that Mr. Tousi deliberately made any false statements regarding Plaintiff.  Plaintiff does not even allege that any false statements were made about him or that he was falsely accused of the conduct which would purportedly have resulted

in his "arrest and other possible consequences." Most notably, Plaintiff states that he left the

Film because "he was in fear of arrest." He does not allege that he was in fear of false arrest, that

such arrest would not have been justified, or that his fear of arrest was the result of Mr. Tousi's

statements as opposed to Plaintiff's own conduct. It is also suspicious that given this fear of

arrest that Defendant would again return to the set. *Complaint ¶46.*

Plaintiff makes non-specific, vague, unsupportable and clearly illogical allegations that

even considered cumulatively cannot be considered so outrageous as to state a claim for

intentional inflection of emotional distress.

2. IIED Claim Cannot be Made in a Breach of Contract Action.

Emotional and mental distress is generally not compensable in a breach of contract action.

*See Marcella v. ARP Films, Inc.* 778 F.2d 112,119 (1985); and *Boyce v. Greeley Square Hotel*

*Co.,* 228 N.Y. 106 (1920). The general rule in contract cases is that "absent a duty upon which

liability can be based, there is no right of recovery for mental distress resulting from the breach

of a contract-related duty." *Wehringer v Standard Security Life Ins. Co.,* 57 N.Y. 2d 757, 759.

Plaintiff's claim is actually a claim that defendants breached the alleged agreement to allow

Plaintiff to act in the Film in exchange for his investment in the LLC, which breach of contract

claim is conspicuously absent from the pleadings. Plaintiff's IIED claims should be dismissed.


E. The Court Should Decline Jurisdiction Over the Second Cause of Action.

Plaintiff claims federal question jurisdiction for its Securities Act claim, and invokes

Supplemental Jurisdiction for the IIED claim. In the event the Court dismisses the Securities Act

claim over which it has original jurisdiction, this Court may decline to exercise Supplemental

14

Jurisdiction under *28 U.S.C. §1367(c)(3)*.    Plaintiff concedes that there is no diversity jurisdiction present.

In general, when all claims are dismissed before trial, the state claims should be dismissed as well. The balance of factors will generally result in declining to exercise jurisdiction over the remaining state law claims, considering the values of judicial economy, convenience, fairness and comity.  *See Marcus  v AT&T Corp.*, 138 F.3d 46 (2d Cir. 1998); and *Carnegie-Mellon Univ. v. Cohill*, 484 U.S.343 (1988)

CONCLUSION

For the reasons stated above, defendants' motion to dismiss should be granted.

Dated:          New York, New York
                October 18, 2007

                                    Respectfully Submitted,

                                        /Ken Sussmane/

                                    Kenneth Sussmane (KS 9301)
                                    McCue Sussmane & Zapfel, P.C.
                                    Attorneys for Defendants
                                    521 Fifth Avenue
                                    28th Floor
                                    New York, New York 10175
                                    212 931-5500