UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ X
ARYEH COHEN,                         :   Case No. 07-cv-6359 (HB)
                                     :
            Plaintiff,               :
                                     :
      vs.                            :   AFFIDAVIT OF MAHYAD TOUSI
                                     :   IN SUPPORT OF DEFENDANT'S MOTION
LOOKING FOR PALLADIN, LLC, MAHYAD    :   TO DISMISS
TOUSI, TOUSI PRODUCTIONS LLC,        :
ANDRZEJ KRAKOWSKI and PINE HILL      :
PRODUCTIONS, INC.                    :
                                     :
            Defendants.              :
------------------------------------ X

STATE OF NEW YORK  )
                   )
COUNTY OF NEW YORK )

I, Mahyad Tousi, being duly sworn, depose and say, that:

1. I am the sole manager of Tousi Productions, LLC, a Nevada limited liability company ("Tousi Productions"). I submit this affidavit in support of defendants' motion to dismiss. address at 4 Pine Hill Drive, Katonah, New York (the "LLC") formed to develop and produce a motion picture titled "Looking for Palladin" (the "Film").

2. Tousi Productions is a manager of Looking for Palladin LLC, a Delaware limited liability company with an with an address at 4 Pine Hill Drive, Katonah, New York (the "LLC") formed to develop and produce a motion picture titled "Looking for Palladin" (the "Film").

3. The Film was shot on location in Antigua, Guatemala during the summer of 2006 and is currently seeking distribution.

4. The Film was the first film to be entirely produced in Guatemala in approximately 70 years. It was a matter of national pride, political achievement, and economic importance for both government officials and businessmen supporting the Film that nothing went wrong. This was repeatedly emphasized by Guatemalan government ministries as the LLC lobbied for government permission and support to produce the Film in Guatemala, without which the Film could not have been filmed.

5. The Film was a milestone production and the Film was mentioned in the press daily in multiple publications with full page spreads, which made the production highly visible.

6. Plaintiff, an investor in the LLC, requested a role in the Film as an actor. The LLC granted such request and cast him in the role of "Nestor", appearing in several scenes with the star of the Film, Ben Gazzara. The LLC arranged for the airfare and hotel accommodations for Plaintiff.

7. I did not form any personal animosity toward Plaintiff at any time during the production and treated him professionally, as did all members of the cast and crew.

8. Plaintiff commenced shooting on July 31, 2006, in Antigua, Guatemala.

9. It was reported to me that on July 31, 2006, Plaintiff attempted to purchase illegal drugs by engaging in negotiations with a drug dealer on the streets of Antigua.

10. It was also reported to me that on July 31, 2006, at a crew member's birthday party with most of the Film's crew present, Plaintiff became inebriated, got into an altercation with the bartender, punched a wall and became erratically emotional. It was further reported that Plaintiff had to be escorted home as he was inconsolable and unable to take care of himself.

11. On August 2, 2006 I received a phone call from an individual identifying himself only as "George" and claiming to be a private security specialist employed to monitor the activities of the production and as part of the security team tasked with ensuring the safety of the Film's cast and crew. George stated to me that he was aware that Plaintiff attempt to purchase illegal drugs on more than one occasion and stated that Plaintiff's conduct endangered the Film production and its crew. I have never met George and do not know his true identity.

12. I spoke with Plaintiff about his conduct and related to him the details of the telephone conversation that I had with George. Plaintiff informed me that Plaintiff had also received a phone call from a man who identified himself as

3

George regarding his conduct.

13. At no time did I make any threats to Plaintiff.

14. Plaintiff determined that it would be in his best interests and the best interests of the Film in which he had invested to leave Guatemala and return home.

15. Plaintiff requested that he be permitted to inform the film's director Andrzej Krakowski ("Krakowski") that Plaintiff was leaving due to a family emergency in order to not distract Krakowski from Krakowski's directorial responsibilities and to spare Plaintiff the embarrassment of explaining Plaintiff's attempt to acquire illegal drugs.

16. Upon Plaintiff's decision to depart, Plaintiff was informed and acknowledged that Plaintiff's role would be recast and that Plaintiff's scenes were going to be re-shot.

17. In Plaintiff's absence Plaintiff's role was recast and some of the scenes involving his character were filmed. As a result of having to recast and re-shoot the scenes involving Nestor, the production was delayed and substantial additional costs were incurred, which will be the subject of a counterclaim against Plaintiff.

18. On August 6, 2006, despite his knowledge that the role had been recast, Plaintiff returned to the set and told Andrzej Krakowski that Plaintiff's family emergency was resolved and Plaintiff was ready to complete the filming of Plaintiff's

4

role. I never made any improper physical conduct with Plaintiff or made any threats to him.

19. I was informed that on August 6, 2006 Plaintiff was also asked to leave the hotel due to Plaintiff's disruptive behavior and because of threatening phone calls that the hotel owners claimed to have received. Such calls were not made by me or my affiliates or at my direction.

20. All defendants treated Plaintiff professionally at all times. Plaintiff's decision to leave Guatemala resulted solely from Plaintiff's inappropriate conduct. I did not have any personal animosity toward Plaintiff and believed only that his conduct may have posed a threat to his personal safety and to the ability of the LLC to complete the Film.

21. Plaintiff seeks to rescind his investment in the LLC; however, since Plaintiff knows that I did not breach the Operating Agreement of the LLC or any other agreement with Plaintiff; he has resorted to a wholly fictitious account of the very unfortunate events in Guatemala in an attempt to state a claim against me.

22. I respectfully request that the Court grant Defendants' motion to dismiss.

_____
Mahyad Tousi

Sworn to before me
this 13th day of November, 2007

_____
Notary Public

KEITH SKLAR
Notary Public, State of New York
No. 02SK6158135
Qualified in Westchester County
Commi--- --- 18, 20__

6