UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

ARYEH COHEN,

               Plaintiff,

-against-

                                        07 Civ. 6359
                                        **AMENDED**
                                        **COMPLAINT**

                                        **PLAINTIFF**
                                        **DEMANDS TRIAL**
                                        **BY JURY**

LOOKING FOR PALLADIN, LLC, MAHYAD
TOUSI, TOUSI PRODUCTIONS, LLC, ANDRZEJ
KRAKOWSKI and PINE HILL PRODUCTIONS, INC.,

               Defendants.

-----------------------------------------------------------------

    Plaintiff Aryeh Cohen, for his amended complaint states:

**The Parties**

    1.  Plaintiff is an individual residing at 1866 East 13th Street, Brooklyn, New York.

    2.  On information and belief, defendant Looking for Palladin, LLC ("Looking for Palladin") is a limited liability company with an address located at 4 Pine Hill Drive, Katonah, New York.

    3.  On information and belief, defendant Mahyad Tousi ("Tousi") is an individual residing at 65 Roebling St., Unit 102, Brooklyn, New York.

    4.  On information and belief, defendant Tousi Productions, LLC ("Tousi Productions") is a limited liability company with an address located at 65 Roebling St., Unit 102, Brooklyn, New York.

    5.  On information and belief, defendant Andrzej Krakowski ("Krakowski") is an individual who resides at 4 Pine Hill Drive, Katonah, New York.

1

6. On information and belief, defendant Pine Hill Productions, Inc. ("Pine Hill") is a corporation with an address located at 4 Pine Hill Drive, Katonah, New York.

**Jurisdiction and Venue**

7. This Court has jurisdiction pursuant to 28 U.S.C. §1331 and 15 U.S.C. §77v over the First Cause of Action set forth herein, because the First Cause of Action arises under 15 U.S.C. §77 l (1). This Court has supplemental jurisdiction pursuant to 28 U.S.C. §1367 over the Second Cause of Action set forth herein, because the Second Cause of Action is so related to the First Cause of Action that they form part of the same case or controversy.

8. Venue is proper in this District pursuant to 15 U.S.C. §77v, because defendants transact business in this District, and because the sale of the security at issue was consummated in this District.

## FIRST CAUSE OF ACTION

9. Looking for Palladin was formed as a limited liability company to develop and produce a motion picture titled "Looking for Palladin" (the "Film").

10. Tousi Productions and Pine Hill are the Managers of Looking for Palladin.

11. By reason thereof, Tousi Productions and Pine Hill are "controlling persons" of Looking for Palladin, as that term is used in 15 U.S.C. §77o.

12. On information and belief, defendant Tousi is the Manager of Tousi Productions who exercises control over the affairs of Tousi Productions.

13. On information and belief, defendant Krakowski is a shareholder, officer and director of Pine Hill, who exercises control over the affairs of Pine Hill.

14. By reason thereof, Tousi and Krakowski are "controlling persons" of Looking for Palladin,

2

as that term is used in 15 U.S.C. §77o.

15. In or about the spring of 2006, the defendants prepared and distributed by means or instruments of transportation or communication in interstate commerce or of the mails a Confidential Private Placement Memorandum (the "Memorandum") which purported to describe to a limited number of qualified investors the proposed sale by Looking for Palladin of Class A membership interests in Looking for Palladin (the "Units").

16. Each of the Units constituted a "security" as that term is used in the Securities Act of 1933 (the "Securities Act").

17. The Memorandum stated that the offered securities had not been registered under the Securities Act, that the offering was being made under exemptions from the Securities Act, and that the offering was being made solely to "accredited investors" as that term is defined in Regulation D ("Regulation D") promulgated under the Securities Act..

18. In the spring of 2006, plaintiff was 28 years old, unmarried and was a law student at New York Law School. Plaintiff was not an accredited investor under Regulation D.

19. In or about the spring of 2006, defendants commenced an effort to sell a Unit to plaintiff..

20. Defendants and their agents did not inquire of plaintiff as to whether he was an accredited investor under Regulation D.

21. Plaintiff did not represent to defendants or their agents that he was an accredited investor under Regulation D.

22. The form of Subscription Agreement for the sale of a Unit that defendants provided to plaintiff provided that plaintiff would pay $70,000.00 for a Unit. The form of Subscription Agreement

3

provided that Subscriptions would be accepted only from persons who were accredited investors, and that a signatory who was an unmarried individual represented that he/she qualified as an accredited investor by checking a box next to a representation that he/she either (i) had a net worth of more than one million dollars, or (ii) that he/she had income of more than $200,000.00 in each of the last two years, and expected to reach the same income level in the current year.

23.   Plaintiff advised defendants that he did not have $70,000.00 available, and that he could pay $65,000.00 from his own funds and from borrowed funds.

24.   Plaintiff's advice to defendants made them aware, or should have made them aware, that plaintiff was not an accredited investor.

25.   Notwithstanding the foregoing, defendants agreed that plaintiff could pay $65,000.00 on execution of the Subscription Agreement, and $5,000.00 on or before October 2, 2006.

26.   On or about July 17, 2006, in the New York City office of counsel for Lookng for Palladin, plaintiff executed a Subscription Agreement which provided that Looking for Palladin would sell and plaintiff would purchase one Unit in Looking for Palladin in consideration of $70,000.00, payable $65,000.00 on execution and $5,000.00 on or before October 2, 2006.   At that time, Plaintiff delivered a check for $65,000.00 to counsel for Looking for Palladin, and the check was cashed.

27.   Plaintiff did not check either of the boxes next to the representations set forth in paragraph 22 hereof.

28.   The Subscription Agreement was executed by Looking for Palladin.  Pine Hill Productions and Tousi Productions signed the Subscription Agreement as Managers of Looking for Palladin. Krakowski signed the Subscription Agreement on behalf of Pine Hill Productions, and  Tousi signed the

4

Subcription Agreement on behalf of Tousi Productions.

29. By reason thereof, defendants Looking for Palladin, Pine Hill Productions, Tousi Productions, Krakowski, and Tousi all were aware that plaintiff had not represented in the Subscription Agreement that he was an accredited investor.

30. By reason thereof, defendants Pine Hill Productions, Tousi Productions, Krakowski, and Tousi all had knowledge or reasonable ground to believe in the existence of facts by which their liability is alleged to exist herein, i.e., that Looking for Palladin, an entity of which they all were controlling persons, had sold plaintiff unregistered securities that were not subject to an exemption from the registration requirements of the Securities Act.

31. Because the offered securities were not registered under the Securities Act, and because plaintiff was not an accredited investor under Regulation D, Looking for Palladin sold plaintiff a security in violation of 15 U.S. C. § 77e of the Securities Act.

32. Plaintiff has demanded the return of the $65,000.00 paid to Looking for Palladin.

33. Plaintiff has tendered the Unit, and by this Complaint again tenders the Unit, to Looking for Palladin, in exchange for return of the said $65,000.00.

34. Looking for Palladin has refused to return said $65,000.00 to plaintiff.

35. By reason thereof, there is due and owing to plaintiff from Looking for Palladin the sum of $65,000.00, together with accrued interest.

36. By reason thereof, because Tousi, Tousi Productions, Krakowski and Pine Hill each are controlling persons of Looking for Palladin, there is due and owing to plaintiff from each of them, jointly and severally, the sum of $65,000.00, together with accrued interest.

5

## SECOND CAUSE OF ACTION, AGAINST DEFENDANT TOUSI

37. Plaintiff repeats and realleges paragraphs 1 through 36 hereof.

38. Plaintiff is an aspiring actor.

39. Plaintiff desired to act in the Film.

40. Defendants knew that Plaintiff desired to act in the Film.

41. Defendants induced Plaintiff to purchase a Unit by telling him that he would be given a part in the Film.

42. Plaintiff, in reliance on defendants' representations that he would be given a part in the Film, executed the Subscription Agreement, and delivered $65,000.00 to defendants.

43. Principal photography of the Film commenced at the end of July 2006, in Antigua, Guatemala.

44. In reliance on defendants' representations that he would have a part in the Film, plaintiff traveled to Antigua, Guatemala on or about July 28, 2006.

45. Defendant Tousi was the producer of the Film.

46. Defendant Krakowski was the director of the Film.

47. On information and belief, on or about July 31, 2006, within just a few days of plaintiff's arrival in Antigua, Guatemala, defendant Tousi formed an extreme personal animosity towards plaintiff. On information and belief, this was because Tousi knew that plaintiff was spending time with Tousi's girlfriend, and Tousi became extremely jealous of plaintiff. On information and belief, as a result thereof, Tousi decided to force plaintiff off the Film and out of the country because of that personal

6

animosity, and to use any means necessary to do so.

48.   Defendant Tousi, and other individuals acting, on information and belief, on Tousi's behalf,

engaged in conduct so outrageous in character, and so extreme in degree, as to go beyond the bounds

of decency and which conduct is intolerable in a civilized community.

49.   On or about August 4, 2006, Plaintiff received a telephone call from a person who was,

on information and belief, acting on behalf of defendant Tousi.   This person threatened plaintiff with

extreme physical harm if he did not leave Guatemala immediately.

49.   Plaintiff called Tousi the same day, and related to him the substance of the conversation.

Tousi told plaintiff that he should leave Guatemala  because if plaintiff did not, he could be put  in prison

on a false charge and undergo extreme physical suffering.   On information and belief, Tousi knew that

these statements were not true and that plaintiff was not in any actual danger from the authorities.   On

information and belief, Tousi made these statements for the express purpose of putting plaintiff in fear of

false  imprisonment and physical harm, despite the fact that plaintiff had not engaged in any wrongful

conduct, and to drive plaintiff off the film and out of Guatemala.   Tousi also told plaintiff that an agent of

the government would be calling Tousi the next day to be sure that Tousi had delivered the desired

message to plaintiff.

50.   The next day, August 5, 2006, Tousi called plaintiff and said that he had just gotten off the

telephone with a government agent, and that plaintiff had to leave the country immediately to avoid

imprisonment on a false charge and physical injury.   Tousi told plaintiff to tell Krakowski that plaintiff

had to leave the country for a family emergency.   On information and belief, Tousi made these

statements for the express purpose of putting plaintiff in fear of false imprisonment and physical harm

7

and to drive him off the film and of the country.

51.  Plaintiff, as a result of the foregoing, and despite the fact that plaintiff had not engaged in any wrongful conduct, was in actual fear of false imprisonment, and of suffering serious physical injury. Krakowski called plaintiff and said that Tousi had told him that plaintiff had a family emergency, and had to leave.  Plaintiff, believing he had no choice but to confirm Tousi's statement to Krakowski, told Krakowski that he did have a family emergency and had to leave Guatemala to attend to it.

52.  Plaintiff did not actually leave Guatemala at that time, but stayed in his hotel room in Antigua, Guatemala.  The next day, August 6, 2007, plaintiff went to the filming location, and told Krakowski that the family emergency had been resolved.  At lunchtime that day, Tousi pushed plaintiff up against a wall, began screaming at him and told plaintiff that if plaintiff tried again to go to the film set, or speak to Krakowski, Tousi would have security remove him and that Tousi would have drugs planted in plaintiff's suitcase.

53.  By reason thereof, plaintiff again was placed in fear of false imprisonment and serious physical injury, despite the fact that plaintiff had not engaged in any wrongful conduct.

54.  Moreover, on information and belief, Tousi, or persons acting on his behalf, called plaintiff's hotel and stated to a hotel employee that plaintiff was engaged in suspicious conduct and that the hotel should have plaintiff removed to protect itself.   As a result, a hotel employee told plaintiff that he had to leave the hotel immediately.

55.  By reason thereof, plaintiff believed that his personal safety required that he abandon the Film and leave Antigua, Guatemala, and he did so.

56.  On information and belief, defendant Tousi acted willfully and purposely with the intention

8

to inflict emotional distress on plaintiff. Such acts were done in reckless disregard of the probability of causing plaintiff emotional distress.

57. The acts of defendant Tousi did, in fact result in plaintiff suffering mental and emotional distress, to the extent that he was required to obtain psychological help and to take medication.

58. By reason thereof, there is due and owing to plaintiff from defendant Tousi compensatory damages in an amount to be proved at trial, but in no event less than $100,000.00.

59. By reason thereof, there is due and owing to plaintiff from defendant Tousi punitive damages in an amount to be determined by the jury.

WHEREFORE, plaintiff demands judgment as follows:

(i) on the first cause of action, judgment against defendants, and each of them, in the amount of $65,000.00, together with accrued interest;

(ii) on the second cause of action, judgment against defendant Tousi in an amount to be proved at trial, but in no event less than $100,000.00, plus punitive damages in an amount to be determined by the jury; and

(iii) costs, disbursements, and for such other and further relief as to the Court seems just and proper.

New York, New York
November 2, 2007

McLaughlin & Stern, LLP
By _____
Jon Paul Robbins (#8517)
Attorneys for Plaintiff
260 Madison Avenue
New York, New York 10017
212-448-1100

9