UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------

ARYEH COHEN,

               Plaintiff,

    -against-

 

LOOKING FOR PALLADIN, LLC, MAHYAD
TOUSI, TOUSI PRODUCTIONS, LLC, ANDRZEJ
KRAKOWSKI and PINE HILL PRODUCTIONS, INC.,

              Defendants.

-----------------------------------------------------------------------

07 Civ. 6359
(HB)

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

**McLAUGHLIN & STERN, LLP**
**260 MADISON AVENUE**
**NEW YORK, NEW YORK 10016**
Attorneys for: Plaintiff
**(212) 448-1100**

TABLE OF CONTENTS

Table of Authorities  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Argument
The Amended Complaint States Valid Causes of Action  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

1. Plaintiff States a Claim for Violation of the Securities Act  . . . . . . . . . . . . . . . . . . . . . . . .  3

2. Plaintiff States a Claim for the Liability of Controlling Persons  . . . . . . . . . . . . . . . . . . . . .  7

3. Plaintiff States a Claim for the Intentional Infliction of Emotional Distress  . . . . . . . . . . . .  8

4. Plaintiff Did Not Agree to Arbitrate this Dispute  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12

Conclusion  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

(i)

## TABLE OF AUTHORITIES

**Cases:**

Eves v. Ray,
42 A.D.3d 481, 483, 840 N.Y.S.2d 105, 106 (2d Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . 11-12

Halpert Enterprises, Inc. v. Harrison,
2007 WL 486561 at *4 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 11

164 Mulberry Street Corp. v. Columbia University,
4 A.D.3d 49, 771 N.Y.S.2d 16 (1st Dep't 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Security Insurance Company of New York v.TIG Insurance Company,
360 F.3d 322, 325 (2d Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Shalom v. Advanced Marketing Technology Corp.,
1990 WL 260674, *1 (S.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13-14

Trump-Equitable Fifth Avenue Co. v. H.R.H. Construction Corp.,
106 A.D.2d 242, 485 N.Y.S.2d 65 (1st Dep't), aff'd, 66 N.Y.2d 779, 488 N.E.2d 115, 497
N.Y.S.2d 369 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

Two Guys from Harrison - N.Y., Inc. v. S.F.R. Realty Associates,
63 N.Y.2d 396, 472 N.E.2d 315, 482 N.Y.S.2d 465 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . 6

Westendorf v. Gateway 2000, Inc.,
2000 WL 307369, *5 (Del. Ch. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

**Federal Statutes:**

15 U.S.C. §77e . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 6-7

15 U.S.C. §77l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

15 U.S.C. §77o . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**Federal Rule of Civil Procedure**

Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2-3

**Federal Regulation:**

17 C.F.R. §230.501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**Treatise:**

5C Wright & Miller, <u>Federal Practice and Procedure</u>, §1363, at 113 (2004)   . . . . . . . . . . . .   2-3

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------
ARYEH COHEN,

                      Plaintiff,

          -against-

                                                    07 Civ. 6359
                                                (HB)

LOOKING FOR PALLADIN, LLC, MAHYAD
TOUSI, TOUSI PRODUCTIONS, LLC, ANDRZEJ
KRAKOWSKI and PINE HILL PRODUCTIONS, INC.,

                         Defendants.
------------------------------------------------------------------------

### MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

Defendants Looking for Palladin, LLC ("Looking for Palladin"), Mahyad Tousi ("Tousi"), Tousi Productions, LLC ("Tousi Productions"), Andrzej Krakowski ("Krakowski") and Pine Hill Productions, Inc. ("Pine Hill") all have moved to dismiss the amended complaint. This memorandum is submitted on behalf of plaintiff Aryeh Cohen. It will show that the motion should be denied.

### Argument

### The Amended Complaint States Valid Causes of Action

The amended complaint is attached to the accompanying declaration of Jon Paul Robbins. Plaintiff states two claims for relief. The first alleges that plaintiff entered into a Subscription Agreement with Looking for Palladin, pursuant to which he purchased unregistered securities in violation of the Securities Act of 1933 (the "Securities Act"). Plaintiff seeks the return of the amount he paid for those

1

unregistered securities.   Plaintiff's second claim seeks damages for the intentional infliction of emotional

dismiss, based on the conduct of defendant Tousi.

Defendants move to dismiss for failure to state a cause of action, pursuant to Rule 12 (b) (6) of

the Federal Rules of Civil Procedure.   They contend that plaintiff "can prove no set of facts to support

his claim for violation of the Securities Act."   Defendants also allege that the amended complaint, on its

face, fails to state a claim for intentional infliction of emotional distress.   Finally, defendants argue that,

assuming plaintiff is able to state a claim, he is required to arbitrate his claim, in accordance with the

arbitration provision contained in Looking for Palladin's Operating Agreement.   Defendants are wrong

on all counts.

**Standard of Review**

This Court has stated that

"[w]hen ruling on a motion to dismiss pursuant to Rule 12 (b) (6) of the Federal Rules of Civil
Procedure, the Court must construe all factual allegations in the complaint in favor of the non-
moving party. *See Krimstock v. Kelly*, 306 F.3d 40, 47-48 (2d Cir. 2002). 'However,
factual allegations must be distinguished from '[c]onclusory allegations or legal conclusions
masquerading as factual conclusions' as the latter will not be accepted as true.' *Burns v. Cook*,
2006 U.S. Dist. LEXIS 77625 at *10 (N.D.N.Y. 2006) citing Smith v. Local 819 I.B.T.
Pension Plan, 291 F.3d 236, 240 (2d Cir. 2002). The Court's consideration is normally
limited to facts alleged in the complaint, documents appended to the complaint or incorporated
in the complaint by reference, and to matters of which judicial notice may be taken. *See Allen
v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991). A motion to dismiss should
not be granted 'unless it appears beyond doubt that plaintiff can prove no set of facts in support
of his claim which would entitle him to relief.' *Shakur v. Selsky*, 391, F.3d 106, 112 (2d Cir.
2004), quoting *Conley v. Gibson*, 355 U.S. 41, 45-46."

Halpert Enterprises, Inc. v. Harrison, 2007 WL 486561 at *4 (S.D.N.Y. 2007).

Accordingly, for purposes of this motion, the Court will accept the factual allegations of the

complaint as true, and construe them in the light most favorable to the pleader.   5C Wright & Miller,

2

Federal Practice and Procedure, §1363, at 113 (2004).  We respectfully submit that the Court should

consider only the amended complaint, the Subscription Agreement, and the Operating Agreement, each

of which may fairly be considered by reason of the allegations of the amended complaint.  The Court

should not consider the affidavits of Mahyad Tousi and Jennifer Mielke, which defendants have

purported to present to the Court on this  motion.  These affidavits are extraneous to the pleading and

should be excluded.[1]

The application of this standard of review mandates that the motion be denied.

**1.  Plaintiff States a Claim for Violation of the Securities Act**

Plaintiff contends that defendants sold him unregistered securities in violation of  15 U.S. C. §

77e of the Securities Act.  This contention is based on the following allegations in the amended

complaint, all of which should be accepted as true for purposes of this motion.

In or about the spring of 2006, the defendants prepared and distributed a Confidential Private

Placement Memorandum (the "Memorandum").  The Memorandum purported to describe to a limited

number of qualified investors the proposed sale by Looking for Palladin of Class A membership

interests in Looking for Palladin (the "Units").  Each of the Units constituted a "security" as that term is

used in the Securities Act of 1933 (the "Securities Act").  Amended Complaint, paras. 15-16.

The Memorandum stated that the offered securities had not been registered under the Securities

Act, that the offering was being made under exemptions from the Securities Act, and that the offering

was being made solely to "accredited investors" as that term is defined in Regulation D ("Regulation

---

[1]If the Court decides to consider those affidavits, and thus treat the motion as one for summary
judgment, which we submit it should not do, we request the opportunity to submit material pertinent to
such a motion in accordance with the last sentence of Rule 12 (b).

3

D") promulgated under the Securities Act. Amended Complaint, para. 17.

In the spring of 2006, plaintiff was 28 years old, unmarried and a law student at New York Law School. Amended Complaint, para. 18.   An unmarried individual qualifies as an accredited investor under Regulation D if he/she either (i) had a net worth of more than one million dollars, or (ii) had income of more than $200,000.00 in each of the last two years, and expected to reach the same income level in the current year. 17 C.F.R. §230.501. Plaintiff was not an accredited investor. Amended Complaint, para. 18.

In or about the spring of 2006, defendants commenced an effort to sell a Unit to plaintiff. Defendants and their agents did not inquire of plaintiff as to whether he was an accredited investor under Regulation D.   Plaintiff did not represent to defendants or their agents that he was an accredited investor under Regulation D. Amended Complaint, paras. 19-21.

The form of Subscription Agreement for the sale of a Unit that defendants provided to plaintiff provided that plaintiff would pay $70,000.00 for a Unit. The form of Subscription Agreement provided that Subscriptions would be accepted only from persons who were accredited investors, and that a signatory who was an unmarried individual  represented that he/she qualified as an accredited investor by checking a box next to a representation that  he/she either (i) had a net worth of more than one million dollars, or (ii) that he/she had income of more than $200,000.00 in each of the last two years, and expected to reach the same income level in the current year.   Amended Complaint, para. 22.

Plaintiff advised defendants that he did not have $70,000.00 available, and that he could pay $65,000.00 from his own funds and from borrowed funds. Plaintiff's advice to defendants made them aware, or should have made them aware, that plaintiff was not an accredited investor.  Notwithstanding

4

the foregoing, defendants agreed that plaintiff could pay $65,000.00 on execution of the Subscription

Agreement, and $5,000.00 on or before October 2, 2006.  Amended Complaint, paras. 22-25.

On or about July 17, 2006, in the New York City office of counsel for Looking for Palladin,

plaintiff executed a Subscription Agreement which provided that Looking for Palladin would sell and

plaintiff would purchase one Unit in Looking for Palladin in consideration of $70,000.00, payable

$65,000.00 on execution and $5,000.00 on or before October 2, 2006.  At that time, Plaintiff

delivered a check for $65,000.00 to counsel for Looking for Palladin, and the check was cashed.

Amended Complaint, para. 26.

Plaintiff did not check either of the boxes next to the representations relating to qualification as

an accredited investor under Regulation D.  Amended Complaint, para. 27.

The Subscription Agreement was executed by Looking for Palladin.  Pine Hill Productions and

Tousi Productions signed the Subscription Agreement as Managers of Looking for Palladin.  Krakowski

signed the Subscription Agreement on behalf of Pine Hill Productions, and  Tousi signed the

Subscription Agreement on behalf of Tousi Productions.   Amended Complaint, para. 28.   See also,

the signature pages on the Subscription Agreement, attached as Exhibit A to the Krakowski Affidavit,

submitted in support of defendants' motion to dismiss.

Accordingly, defendants Looking for Palladin, Pine Hill Productions,  Tousi Productions,

Krakowski, and Tousi all were aware that plaintiff had not represented in the Subscription Agreement

that he was an accredited investor.   Amended Complaint, para. 29.

It is plaintiff's contention that because the offered securities were not registered under the

Securities Act, and because plaintiff was not an accredited investor under Regulation D, Looking for

Palladin sold plaintiff a security in violation of 15 U.S. C. § 77e of the Securities Act.   Amended

Complaint, para. 31.

Defendants argue that plaintiff, by signing the Subscription Agreement, represented that he was

an accredited investor and that he cannot now seek return of his investment on the ground that he was

not, in fact, such an accredited investor.  The  Subscription Agreement makes it clear that the defense

argument has no merit.

The Subscription Agreement provides that a purchaser must represent that he/she is an

accredited investor by checking the box next to the applicable representation.   See Krakowski, Exhibit

A, at pp. 1-2.   The defendants concede that plaintiff did not check any of the boxes.  Defendants'

memorandum at p. 3.  This concession ends the inquiry.  Defendants drafted a proper Subscription

Agreement, which required the purchaser to make a specific representation as to which category of

accredited investor was applicable in order for defendants to reach the safe harbor provided by

Regulation D.  Plaintiff here did not make that representation.  Defendants now contend that the

Subscription Agreement's requirement that the box next to the applicable representation be checked

really was not a requirement at all.   Their contention is unsupportable.  If the defense's argument were

correct, an important element of the contract, the provision requiring the purchaser to make a specific

representation, would have no meaning, and would be irrelevant.  That cannot be the correct

interpretation of the Subscription Agreement.   See, e.g., Two Guys from Harrison - N.Y., Inc. v.

S.F.R. Realty Associates, 63 N.Y.2d 396, 472 N.E.2d 315, 482 N.Y.S.2d 465 (1984) (in construing

a contract, one of court's goals is to avoid an interpretation that would leave contractual clauses

meaningless) ; Trump-Equitable Fifth Avenue Co.  v.  H.R.H.  Construction Corp., 106 A.D.2d 242,

6

485 N.Y.S.2d 65 (1st Dep't), aff'd, 66 N.Y.2d 779, 488 N.E.2d 115, 497 N.Y.S.2d 369 (1985)

(contract should be construed so as to give force and effect to all its provisions).

The cases cited by the defense on this issue are inapplicable, because the purchasers in those cases were found to have in fact represented that they were accredited investors. That is not this case, because plaintiff did not make the required representation, and this is proven by the very document relied on by the defendants.

The amended complaint properly pleads a claim for a material violation of the Securities Act, which requires defendants to return plaintiff's investment. The defendants claim that the Subscription Agreement shows that the claim should be dismissed, but they are incorrect. To the contrary, the Subscription Agreement, on its face, proves that plaintiff did not represent that he was an accredited investor. It follows from this that the exemption provided by Regulation D is inapplicable, that defendants sold unregistered securities, and plaintiff is therefore entitled to the return of his money. 15 U.S.C. §§77e and 77l.

**2. Plaintiff States a Claim for the Liability of Controlling Persons**

The amended complaint alleges that defendants Tousi Productions, Pine Hill, Tousi and Krakowksi are "controlling persons" of Looking for Palladin, and are therefore liable to plaintiff as well, pursuant to 15 U.S.C. §77o. Amended Complaint, paras. 10-14. Defendants do not deny that these defendants are controlling persons, but they argue that there is no "controlling person" liability because those defendants had "no knowledge of or reasonable ground to believe in the existence of facts by reason of which the liability of the controlled person is alleged to exist." Defendants' memorandum at p. 9. The problem with this argument is that the Subscription Agreement, on its face, shows that each

7

of the "controlling persons" did have such knowledge.

The Subscription Agreement was executed by Looking for Palladin. Pine Hill Productions and Tousi Productions signed the Subscription Agreement as Managers of Looking for Palladin. Further, Krakowski signed the Subscription Agreement on behalf of Pine Hill Productions, and Tousi signed the Subscription Agreement on behalf of Tousi Productions. Amended Complaint, para. 28; see Subscription Agreement, attached as Exhibit A to the Krakowski Affidavit.

The Subscription Agreement therefore proves, again on its face, that the "controlling person" defendants Pine Hill Productions, Tousi Productions, Krakowski, and Tousi all were aware that plaintiff had not represented in the Subscription Agreement that he was an accredited investor. They did, in fact, have knowledge or reasonable ground to believe in the existence of facts by which their liability is alleged to exist herein, i.e., that Looking for Palladin, an entity of which they all were controlling persons, had sold plaintiff unregistered securities that were not subject to an exemption from the registration requirements of the Securities Act. Amended Complaint, paras. 29-30. The amended complaint, therefore, states a good claim against these defendants.

### 3. Plaintiff States a Claim for the Intentional Infliction of Emotional Distress

The defense argues that the second claim for relief should be dismissed because, according to defendants, the allegations do not allege conduct sufficiently outrageous, and so extreme in degree, as to go beyond the bounds of decency. We beg to differ. The second claim for relief does indeed allege conduct sufficient to state a claim for the intentional infliction of emotional distress.

Plaintiff is an aspiring actor, who desired to act in the Film to be produced by defendants. In reliance on defendants' representations that he would have a part in the Film, plaintiff traveled to

8

Antigua, Guatemala on or about July 28, 2006, where principal photography had commenced. Amended Complaint, paras. 38-44.

Defendant Tousi was the producer of the Film, and defendant Krakowski was the director of the Film. Amended Complaint, paras. 45-46.

On or about July 31, 2006, within just a few days of plaintiff's arrival in Antigua, Guatemala, defendant Tousi formed an extreme personal animosity towards plaintiff, because, on information and belief, Tousi knew that plaintiff was spending time with Tousi's girlfriend, and Tousi became extremely jealous of plaintiff. On information and belief, Tousi decided to force plaintiff off the Film and out of the country because of that personal animosity, and to use any means necessary to do so. Amended Complaint, para. 47.

On or about August 4, 2006, Plaintiff received a telephone call from a person who was, on information and belief, acting on behalf of defendant Tousi. This person threatened plaintiff with extreme physical harm if he did not leave Guatemala immediately. Plaintiff called Tousi the same day, and related to him the substance of the conversation. Tousi told plaintiff that he should leave Guatemala because if plaintiff did not, he could be put in prison on a false charge and undergo extreme physical suffering. On information and belief, Tousi knew that these statements were not true and that plaintiff was not in any actual danger from the authorities. On information and belief, Tousi made these statements for the express purpose of putting plaintiff in fear of false imprisonment and physical harm, despite the fact that plaintiff had not engaged in any wrongful conduct. Tousi also told plaintiff that an agent of the government would be calling Tousi the next day to be sure that Tousi had delivered the desired message to plaintiff. Amended Complaint, para. 49.

The next day, August 5, 2006, Tousi called plaintiff and said that he had just gotten off the telephone with a government agent, and that plaintiff had to leave the country immediately to avoid imprisonment on a false charge and physical injury.  Tousi told plaintiff to tell Krakowski that plaintiff had to leave the country for a family emergency.  On information and belief, Tousi made these statements for the express purpose of putting plaintiff in fear of false imprisonment and physical harm and to drive him off the film and of the country.  Amended Complaint, para. 50.

Plaintiff, as a result of the foregoing, and despite the fact that plaintiff had not engaged in any wrongful conduct,  was in actual fear of false imprisonment, and of suffering serious physical injury.  Krakowski called plaintiff and said that Tousi had told him that plaintiff had a family emergency, and had to leave.  Plaintiff, believing he had no choice but to confirm Tousi's statement to Krakowski, told Krakowski that he did have a family emergency and had to leave Guatemala to attend to it.  Amended Complaint, para. 51.

Plaintiff did not actually leave Guatemala at that time, but stayed in his hotel room in Antigua, Guatemala.  The next day, August 6, 2007, plaintiff went to the filming location, and told Krakowski that the family emergency had been resolved.  At lunchtime that day, Tousi pushed plaintiff up against a wall, began screaming at him and told plaintiff that if plaintiff tried again to go to the film set, or speak to Krakowski, Tousi would have security remove him and that Tousi would have drugs planted in plaintiff's suitcase.  Amended Complaint, para. 52.

As a result, plaintiff again was placed in fear of false imprisonment and serious physical injury, despite the fact that plaintiff had not engaged in any wrongful conduct.  Amended Complaint, 53.

Moreover, on information and belief, Tousi, or persons acting on his behalf, called plaintiff's

10

hotel and stated to a hotel employee that plaintiff was engaged in suspicious conduct and that the hotel

should have plaintiff removed to protect itself.   As a result, a hotel employee told plaintiff that he had to

leave the hotel immediately.   Amended Complaint, para. 54.

By reason thereof, plaintiff believed that his personal safety required that he abandon the Film

and leave Antigua, Guatemala, and he did so.  Amended Complaint, para. 55.

On information and belief, defendant Tousi acted willfully and purposely with the intention to

inflict emotional distress on plaintiff.  Such acts were done in reckless disregard of the probability of

causing plaintiff emotional distress.   Amended Complaint, para. 56.

The acts of defendant Tousi resulted in plaintiff suffering mental and emotional distress, to the

extent that he was required to obtain psychological help and to take medication.  Amended Complaint,

57.

The defense has submitted affidavits, one from Mr. Tousi and one from a non-party, Ms.

Mielke, in an attempt to rebut the above allegations.   These affidavits should not be considered on this

motion.  They represent an attempt to bring matters outside the pleading to the Court's attention on a

motion to dismiss.  This is not proper procedure.  The allegations of the amended complaint must be

accepted as true for purposes of this motion.  Halpert Enterprises, Inc. v. Harrison, 2007 WL 486561

at *4 (S.D.N.Y. 2007), supra.  The sole issue at this juncture is whether the amended complaint alleges

conduct so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency

and which conduct is intolerable in a civilized community.

The case law shows that the amended complaint states a claim.  In Eves v. Ray, 42 A.D.3d

481, 483, 840 N.Y.S.2d 105, 106 (2d Dep't 2007), the counterclaiming defendant recovered for

11

intentional infliction of emotional distress when he proved a "deliberate and malicious campaign of harassment or intimidation," and threats of physical harm.   The amended complaint in the instant case contains similar allegations of intimidation and threats of physical harm, and it too states a valid claim for relief.   See, also, 164 Mulberry Street Corp. v. Columbia University, 4 A.D.3d 49, 771 N.Y.S.2d 16 (1st Dep't 2004), where the court held that a jury had to decide whether letters to restaurants seeking responses to false allegations of food poisoning constituted intentional infliction of emotional distress.

We submit that the allegations in the amended complaint comply with pleading requirements. The amended complaint alleges that Mr. Tousi decided to force plaintiff off the Film and out of the country because of  personal animosity, and to use any means necessary to do so, including: causing a person to threaten plaintiff with extreme physical harm if he did not leave Guatemala immediately; telling plaintiff that he should leave Guatemala  because if plaintiff did not, he could be put  in prison on a false charge and undergo extreme physical suffering, while knowing that was not true; pushing plaintiff up against a wall;  screaming at plaintiff, and telling plaintiff that if plaintiff tried again to go to the film set, or speak to defendant Krakowski, then Tousi would have security remove him and that Tousi would have drugs planted in plaintiff's suitcase; and causing someone to call plaintiff's hotel to tell a hotel employee that plaintiff was engaged in suspicious conduct and that the hotel should have plaintiff removed to protect itself.   It cannot be denied that the amended complaint alleges engaged in conduct so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency and which conduct is intolerable in a civilized community.

**4.  Plaintiff Did Not Agree to Arbitrate this Dispute**

Defendants claim that plaintiff must arbitrate this dispute because the Operating Agreement of

12

Looking for Palladin (copy attached as Exhibit B to the Krakowski affidavit) provides that "any dispute *hereunder* shall be resolved solely by arbitration" (italics added).   The problem with the defense's position is that this dispute does not arise under the Operating Agreement.  The dispute arises because defendants, by execution of the Subscription Agreement, sold plaintiff unregistered securities in violation of federal law, and because they have refused to return his investment as they are required to do.  Plaintiff's claim arises under the federal securities law.  Plaintiff has not asserted a claim under the Operating Agreement and that document is  irrelevant to the issues presented by this case.  The Subscription Agreement does not contain an arbitration clause, and it does not incorporate the Operating Agreement's arbitration clause by reference.  Plaintiff has no obligation to arbitrate.

While federal policy favors arbitration, that is so *only* when the parties have agreed to arbitrate a dispute.  As the Second Circuit held in Security Insurance Company of New York v. TIG Insurance Company, 360 F.3d 322, 325 (2d Cir. 2004):

> "The federal policy favoring arbitration, however, does not change the long established principle that 'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to arbitrate.'"

Plaintiff never agreed to arbitrate a claim arising by reason of defendants' violation of the federal securities laws, and he should not be compelled to do so.

Defendants rely on Shalom v. Advanced Marketing Technology Corp., 1990 WL 260674, *1 (S.D.N.Y. 1990), but that case is distinguishable.  The agreement in Shalom required arbitration of any dispute "arising out of or in connection" with the agreement.  That language is broader than the language found in the Operating Agreement, which requires arbitration only of "any  disputes hereunder."

13

Moreover, in <u>Shalom</u>, the court held the claim "clearly" arose under the agreement containing the arbitration clause. As noted, in the instant case, the claim does not arise under the Operating Agreement; to the contrary, that Agreement is irrelevant to the dispute, which is based on the completely separate Subscription Agreement and the requirements of the federal securities laws.

Finally, in <u>Shalom</u>, the plaintiff himself pleaded that he had entered into a single "investment contract" by entering two interrelated agreements. In the case before this Court, the plaintiff made no such allegation. To the contrary, plaintiff alleges that his claim is based on the Subscription Agreement and the federal securities laws. The Operating Agreement is not even mentioned in the amended complaint.

Defendants also relies on <u>Westendorf v. Gateway 2000, Inc.</u>, 2000 WL 307369, *5 (Del. Ch. 2000), but the arbitration agreement in that case provided that it governed any "related purchase." The court held that plaintiff was in fact suing for a claim based on a "related purchase," so that she was bound by the arbitration clause. Again, our case is different. The Operating Agreement's arbitration clause applies only to disputes arising under the Operating Agreement. It does not purport to govern disputes arising under separate agreements, and it certainly does not provide that it governs disputes based on the federal securities laws. Plaintiff is not bound to arbitrate the issues in this case.

14

**Conclusion**

For all the foregoing reasons, plaintiff requests that the motion to dismiss be denied in all

respects.

New York, New York
November 23, 2007

Respectfully submitted,
McLaughlin & Stern, LLP
By _____
     Jon Paul Robbins (JPR # 8517)
Attorneys for Plaintiff
New York, New York 10016
212-448-1100

15