```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
ARYEH COHEN,                                                 :   Case No. 07-cv-6359 (HB)
                                                             :
            Plaintiff,                                       :
                                                             :
    vs.                                                      :
                                                             :
LOOKING FOR PALLADIN, LLC, MAHYAD                            :
TOUSI, TOUSI PRODUCTIONS LLC,                                :
ANDRZEJ KRAKOWSKI and PINE HILL                              :
PRODUCTIONS, INC.                                            :
                                                             :
            Defendants.                                      :
------------------------------------------------------------ X
```

Defendants, by their attorneys McCue Sussmane & Zapfel, P.C, respectfully submit this Reply Memorandum of Law in further support of their motion to dismiss this action.

ARGUMENT

**A. Plaintiff States No Claim for Violation of the Securities Act.**

Plaintiff claims that Defendants unlawfully sold to Plaintiff a membership interest in Looking for Palladin LLC (the ""LLC")  without filing a registration statement with the Securities Exchange Commission in violation of Section 5 of the Securities Act of 1933, as amended (the "Securities Act") or qualifying for an exemption from registration under Regulation D.  Such claim is based solely on the allegation that defendants accepted an investment from one non-accredited investor, Plaintiff. [1]

Plaintiff admits in the Amended Complaint that:

- Plaintiff knew that the membership interests in the LLC were not registered.

---

[1] All other investors in the LLC were accredited investors and were affiliates of defendant Andrzej Krakowski. *Krakowski Aff.* *¶6.*

- Plaintiff knew that the membership interests were being offered only to accredited investors.
- Plaintiff induced defendants to accept his subscription by falsely representing in the Subscription Agreement in writing that was an accredited investor.

The Amended Complaint claims that Defendants distributed to Plaintiff a Private Placement Memorandum (the "Memorandum") describing the sale of membership interests in Looking for Palladin, LLC (the "LLC") (*Amended Complaint ¶ 15)* and states:

> "The Memorandum stated that the offered securities had not been registered under the Securities Act, that the offering was being made under exemptions from the Securities Act, and that the offering was being made solely to 'accredited investors' as that term is defined in Regulation D promulgated under the Securities Act."

*Amended Complaint ¶ 17.*

Plaintiff executed an Operating Agreement for the LLC which stated:

> Investment Representations. The undersigned Members understand (1) that the Membership Interests evidenced by this Operating Agreement have not been registered under the Securities Act of 1933, as amended, the securities laws of the State of Delaware or any other state securities laws (the "Securities Acts") because the Company is issuing these Membership Interests in reliance upon the exemptions from the registration requirements of the Securities Acts providing for issuance of securities not involving a public offering . . ..

*Krakowski Aff. Ex. B (Operating Agreement ¶13.14).*

Notably absent from the Amended Complaint or Plaintiff's opposition is any allegation that Plaintiff was unaware that the interests were not registered or that members must be accredited investors.

Plaintiff executed and delivered to defendants a Subscription Agreement containing the following unequivocal written representation:

> 2. Accredited Investors. Subscriptions will be accepted only from persons who are accredited investors; as such term is defined under the Securities Act of 1933, as amended. The undersigned [Plaintiff] represents that he qualifies as an accredited investor in accordance by satisfying one of the requirements set forth below . . .

*Amended Complaint ¶26, and Krakowski Aff. Ex. A.*

The Subscription Agreement is unambiguous. Plaintiff represented that he was an accredited investor. Plaintiff's failure to indicate which of the two requirements he satisfied does not change the fact that Plaintiff unequivocally represented that he qualified as an accredited investor by satisfying one of the two requirements. There is no possible reading of the Subscription Agreement to support Plaintiff's attempt to torture the clear representation made to defendants. Such argument is particularly frivolous in light of the failure of Plaintiff to aver that he was either unaware that subscriptions would be accepted only from accredited investors or that he ever informed a defendant that he was not an accredited investor.

The fact that Plaintiff now admits that he lied to defendants cannot give rise to a claim for violation of the Securities Act.

Plaintiff's claim should also be dismissed because in addition to his willful misrepresentation, he was aware of the unregistered status of the securities. In *Noz v. Value Investing Partners, Inc.*, 1999 WL 387400 (S.D.N.Y. 1999), the court dismissed an action for the sale of unregistered securities under Section 5 of the Securities Act because plaintiffs were aware that the securities being sold were unregistered. In that case, plaintiffs executed a subscription agreement whereby they acknowledged that the shares being sold were not being registered and they represented that they were accredited investors. *Id.* at 1. The court ruled that "plaintiffs at the time of purchase were fully

aware the securities were exempt from registration, which is destructive of their claim". *Id.* See also *Pinnacle Communications International, Inc. v. American Family Mortgage Corporation, 417 F. Supp. 2d 1072* (Minn. 2006) (holding that Plaintiff was estopped from claiming that Plaintiff did not qualify for the purchase of unregistered securities after Plaintiff affirmed in writing that Plaintiff was qualified).

Plaintiff was fully aware that the membership interests in the LLC were not registered and he represented that he was an accredited investor. Such facts are each destructive of Plaintiff's claim.

Plaintiff's frivolous argument that his own misrepresentation of his status defeats Defendants' exemption under Regulation D should be rejected.

**B. Plaintiff Fails to State a Claim for the Liability of Controlling Persons**

Plaintiff alleges that the managers of the LLC and the individual officers of the managers are liable as controlling persons. However Plaintiff cannot escape the fact Plaintiff was admitted as a member of the LLC based on his written representations. The Subscription Agreement is clear on its face that Plaintiff warranted that Plaintiff was an "accredited investor." Plaintiff pleads no facts to support his conclusory allegation that defendants had knowledge or reasonable grounds to believe that Plaintiff was not an accredited investor other than the ambiguous and irrelevant fact that he requested deferral of $5,000 of his capital contribution.

**C. Plaintiff's Claims Must be Arbitrated.**

Plaintiff fails to cite any cases to support his argument that the Court should ignore strong public policy favoring enforcement of agreement to arbitrate.

Plaintiff fails to distinguish *Shalom v. Advanced Marketing Technology Corp.*, 1990 WL 260674 (S.D.N.Y. 1990 ), which held that a plaintiff could not avoid submitting a matter to arbitration by claiming one of the interrelated documents under a single agreement is completely distinct and concerns separable subject matter. *Id.*

As was the case in Shalom, the LLC's Subscription Agreement and Operating Agreement are interrelated. The Subscription Agreement is titled "Looking for Palladin, LLC Subscription Agreement" and states "the Company will be operated in accordance with the Operating Agreement (the "Operating Agreement") furnished to the undersigned herewith". The Subscription Agreement also requires "Tender of the aforesaid Funds, together with this Agreement and the signature page of the Operating Agreement (the "Documents") shall be made by delivery of the same to the Company…" before subscription is complete. *Krakowski Aff. Ex. A ( Subscription Agreement ¶1(b).*

Plaintiff resorts to misquoting *Shalom* by citing an irrelevant part of the agreement, not the arbitration clause.  The *Shalom* arbitration clause in fact stated

> "any dispute arising hereunder shall be submitted to binding arbitration…"

*Id. at 1.*

The LLC's  Operating Agreement (*Krakowski Aff. Ex. B. ¶13.14)* states:

> "Any dispute hereunder shall be resolved solely by arbitration . . ."

The arbitration clauses are indistinguishable.

5

Plaintiff offers no authority to support his argument that the broad arbitration clause executed by the parties does not require arbitration of both the securities claim and IIED claim.  The Affidavits of Mahyad Tousi and Jennifer Mielke submitted by defendants in support of this motion establish that the actions of defendant Tousi were taken in his capacity as a manager of the LLC and that the IIED claim is in fact a thinly veiled claim for breach of the Operating Agreement by allegedly failing to allow Plaintiff to appear in the Film.  Plaintiff's claim that he entitled to compensation for his inability to appear in the Film arises under the Operating Agreement.

D. Plaintiff Fails to State a Claim for IIED.

Plaintiff's request that the Court ignore the Tousi and Mielke Affidavits is disingenuous in light of the fact that Plaintiff has chosen not to verify the Complaint or submit an affidavit attesting to any of the facts underlying his claim for Intentional Infliction of Emotional Distress.  While duly certified by Plaintiff's counsel, the Amended Complaint resorts to the qualification "upon information and belief" at least eight times in connection with the allegations of facts essential to state a claim for IIED, leaving the Amended Complaint devoid of actual factual allegations to support the outlandish claim that Mr. Tousi engaged in extreme and outrageous conduct.   While Plaintiff elected not to provide a verification or affidavit to provide actual factual support for his claim, there is no basis to ignore the relevant affidavits submitted by plaintiffs.  The record is clear that plaintiff has fabricated a claim for IIED where none exists.

CONCLUSION

For the reasons stated above, defendants' motion to should be granted dismissing all causes of action, or in the alternative dismissing or staying the action and compelling arbitration.

Dated:    New York, New York
          November 30, 2007

                                          Respectfully Submitted,

                                          /Ken Sussmane/
                                          Kenneth Sussmane (KS 9301)
                                          McCue Sussmane & Zapfel, P.C.
                                          Attorneys for Defendants
                                          521 Fifth Avenue  28th Floor
                                          New York, New York 10175
                                          212 931-5500



Not Reported in F.Supp.2d                                                                                                          Page 1
Not Reported in F.Supp.2d, 1999 WL 387400 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

C
Noz v. Value Investing Partners, Inc.
S.D.N.Y.,1999.
Only the Westlaw citation is currently available.
United States District Court S.D. New York.
Fred NOZ and Erez Levav, On behalf of
Themselves and all Others Similarly Situated
Plaintiffs,
v.
VALUE INVESTING PARTNERS, INC. and
Kevin R. Greene Defendants.
**No. 98 Civ. 6977(RO).**

June 14, 1999.

*MEMORANDUM AND ORDER*
OWEN, J.
**\*1** This is an asserted class action alleging negligent misrepresentation in connection with the sale of unregistered securities. Plaintiffs Fred Noz and Erez Levav bought unregistered common stock in Virtual Mortgage Network ("Virtual"), a mortgage broker and bank. The purchases were effected through defendants, broker-dealer Value Investing Partners ( "VIP"), and its chairman, Kevin Greene, who maintain a place of business in this district. Plaintiff Noz bought approximately $112 thousand of stock and plaintiff Levav bought approximately $12 thousand, in Virtual's offering. They sue VIP on behalf of themselves and all other buyers of Virtual's unregistered stock from or through VIP, claiming a violation of Section 5 of the Securities Act of 1933, 15 U.S.C. § 77e, and negligent misrepresentation.

Virtual, hoping to raise money to expand its business, had entered into an agreement with VIP whereby VIP would solicit potential purchasers to buy unregistered common shares of Virtual, and then VIP would be a co-underwriter for Virtual's initial public offering, which was planned for late 1997. Between June and October of 1997, about 600,000 unregistered shares of Virtual's stock were sold, to twenty-three people, for about $3.4 million. In October 1997 Virtual filed a preliminary registration statement with the Securities and Exchange Commission, and it filed an amended registration statement in February of 1998. However, Virtual never did effect the public offering.

Plaintiffs move to be appointed lead plaintiffs and to designate their counsel as lead counsel. Defendants cross-move to dismiss the complaint. When considering a motion to dismiss, the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2nd Cir.1995). I first address the defendants' motion to dismiss the Section 5 claim.

Section 12(1) of the Security Act of 1933, 15 U.S.C. § 771(a)(1), imposes civil liability for violations of Section 5's registration requirement, 15 U.S.C. § 77(e). However, plaintiffs-indeed all twenty-three purchasers-signed a "Subscription Agreement" [FN1] which stated, in relevant part:

> FN1. This is before me since it was the basis of the purchase of securities that is at the center of this claim. It is therefore incorporated into the complaint even though it was not attached to the complaint nor referred to in the complaint. *Cortec Indus., Inc. v. Sum Holding, L.P.,* 949 F.2d 42, 48 (2nd Cir.1991).

Section 2. Investment Representations. Purchaser acknowledges that the Shares are not being registered under the Securities Act of 1933, as amended (the Act), based in part, on reliance that the issuance of the Shares is exempt from registration under Section 4(2) of the Act as not involving any public offering. Purchaser further acknowledges that the Company's reliance on such

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                               Page 2
Not Reported in F.Supp.2d, 1999 WL 387400 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

exemption is predicated, in part, on the representations set forth below made by Purchaser to the Company.
(a) Purchaser is an "accredited investor" as such term is defined under Rule 501(a) of the Act....

This being so, plaintiffs at the time of purchase were fully aware the securities were exempt from registration,[FN2] which is destructive of their claim. *See,Silva Run Worldwide Ltd. v. Gaming Lottery Corp.,* where this court dismissed a claim by plaintiffs that they relied on misrepresentations by defendants with regard to the sale of unregistered securities where the plaintiffs had previously signed a subscription agreement waiving such reliance. No. 96 Civ. 3231, 1998 WL 167330 at *22 (S.D.N.Y. April 8, 1998).

> FN2. I note that the plaintiffs do not claim that the Subscription Agreements are unconscionable or invalid in anyway.

**\*2** The Subscription Agreement also states that the buyers were not presented with any public solicitation or advertising relating to the purchase of the unregistered securities. The Agreement specifically warns that an investment in the securities of a private corporation is "non-marketable," "restricted" and may not yield a return and includes a representation by the buyer that he has the ability to bear the economic risk of this investment and can afford a complete loss of the purchase price. The Section 12(1) claim is dismissed.

Plaintiffs' negligent misrepresentation claim also fails. First, plaintiffs have failed to allege that a special relationship existed between plaintiffs and defendants. Under New York law, to succeed on a claim of negligent misrepresentation, plaintiffs must first establish that there is duty on a defendant to give correct information to the plaintiff. *King v. Crossland Savings Bank,* 111 F.3d 251, 257 (2nd Cir.1997). To establish such a duty here, plaintiffs must allege that there was more than the ordinary relationship between a broker and a buyer, *St. Paul Fire & Marine Ins. Co. v. Heath Fielding Ins.*

*Broking Ltd.,* 976 F.Supp. 198, 204 (S.D.N.Y.1996), and that the defendants possessed "unique or special expertise," or were "in a special position of confidence and trust with the injured party such that reliance on the negligent representation [was] justified."*In Re Fine Host Corp. Securities Litigation,* 25 F.Supp.2d 61, 72 (D.Conn.1998). This special relationship is created where the plaintiff specifically seeks the expert advice of the defendant, or where the defendant committed itself to additional effort or expense, or made an additional warranty with regard to the transaction. *St. Paul Fire & Marine,* 976 F.Supp. at 205. Not only do plaintiffs here fail to allege such a relationship, but the Subscription Agreement plaintiffs signed specifically states that they were making the investment "based on the advice of [their] own legal counsel and investment advisors, [and] that [they were] experienced in evaluating such companies"-thus, they did not seek the expert advice of any defendant.[FN3]

> FN3. I note that the allegations of misrepresentation here are weak. Plaintiffs claim that defendants should have disclosed that Barron had debts from his prior business and that "there was a substantial question" whether the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 et seq., would apply to make Virtual's plan to pay real estate brokers a referral fee when they directed customers to Virtual's mortgage services.

Furthermore, a claim for negligent misrepresentation with regard to the sale of securities, which does not require intentional deceit, is covered by New York's Martin Act, N.Y. Gen. Bus. Law Art. 23-A, §§ 352 et seq., and can only be asserted by the Attorney General, not private litigants. *SeeGranite Partners, L.P. v. Bear. Stearns & Co., Inc.,* 17 F.Supp.2d 275, 291 (S.D.N.Y.1998). Accordingly I grant the defendants' motion to dismiss the negligent misrepresentation claim.[FN4]

> FN4. Having dismissed the federal claim above, I would, in any event, have

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                        Page 3
Not Reported in F.Supp.2d, 1999 WL 387400 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

>  declined jurisdiction on the pendent state law claim.

Because I have concluded that the plaintiffs failed to state a claim upon which relief may be granted, I need not and do not reach the issue of whether the complaint should be dismissed because it fails to join Virtual or its chairman, and obviously do not reach the issue of appointment of lead plaintiff and lead counsel for the proposed class action.

**\*3** The action is dismissed with costs and disbursements to the defendants.

So ordered.

S.D.N.Y.,1999.
Noz v. Value Investing Partners, Inc.
Not Reported in F.Supp.2d, 1999 WL 387400 (S.D.N.Y.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.